BENTON TAYLOR ET AL *v.* LUCILLE PURIFOY ET AL

5-4957                                              445 S. W. 2d 485

Opinion delivered October 13, 1969

*S. Hubert Mayes, Jr.,* for appellants.

*Lookadoo, Gooch & Lookadoo* and *L. Weems Trussell,* for appellees.

CONLEY BYRD, Justice. Appellant Benton Taylor, who farms near Sparkman, sent his two ton truck and a ¾ ton pick-up truck borrowed from his brother, appellant Phil Taylor, to the Arkadelphia sale barn to pick up cows he had purchased. Frank Cash, an employee of Benton Taylor, drove the two ton truck and Horace Johnson, Jr., an employee of Benton Taylor, drove the ¾ ton pick-up truck. The two trucks loaded with cows left the sale barn at dusk, the larger truck in front and the pick-up following some 100 yards to a quarter of a mile behind. About five miles from Sparkman a Volkswagen collided head-on with the pick-up truck, in the

pick-up truck's lane of traffic, knocking the battery loose and completely disabling the truck. Subsequent to the first collision an automobile driven by Doyle Honeycutt, in which appellee Lucille Purifoy was a passenger, collided with the then unlighted pick-up truck. Appellees Lucille Purifoy and Lawrence Purifoy brought suit against appellants Benton Taylor and Phil Taylor and Benton Taylor's employees, Cash and Johnson. The jury in returning a verdict for appellees against Benton Taylor and Phil Taylor exonerated Cash and Johnson by finding in their favor. Thus the sole issue on this appeal is whether there is any independent actionable negligence on the part of Benton Taylor and Phil Taylor.

Appellees contend that both Benton Taylor and Phil Taylor were guilty of independent actionable negligence because of a failure to equip the pick-up truck with the flares required by Ark. Stat. Ann. § 75-722 (Supp. 1967). That statute provides:

"(A)   Certain vehicles to carry flares or other warning devices.

(1)   No person shall operate any motor truck, passenger bus or truck tractor, or any motor vehicle towing a house trailer, upon any highway outside the corporate limits of municipalities at any time from a half hour after sunset to a half hour before sunrise unless there shall be carried in such vehicle. . .

(a)   At least three [3] flares or three [3] red electric lanterns or three [3] portable red emergency reflectors, each of which shall be capable of being seen and distinguished at a distance of not less than 600 feet under normal atmospheric conditions at nighttime."

Appellant on the other hand argues that the statute is

not applicable because a pick-up truck is not a "motor truck" within the meaning of the statute.

The record shows that as Cash and Johnson were proceeding down Highway No. 7, Cash kept up with Johnson through his rearview mirror. After a Volkswagen passed, he no longer saw Johnson's lights, so he turned around and went back looking for Johnson. Johnson testified that after the collision with the Volkswagen, which knocked out his lights, he came to himself a little and realized there was some lights coming; that he had no flashlight or flares, but he used a black leather cap to flag traffic. One car slowed down and came on around. The next car was coming pretty fast; he kept flagging but about that time the car hit the back-end of the truck. Mr. Kenneth Rogers, a state policeman, testified that he investigated the accident and found no flares in the truck. Cash states that he arrived at the scene of the collision between the pick-up truck and the Volkswagen about the time that Honeycutt hit the pick-up truck. In fact Cash says he took to the ditch to avoid a collision with Honeycutt who was swerving at the time to miss the pick-up truck.

Cases from other jurisdictions reach different conclusions as to whether a pick-up is a motor truck within the meaning of the statute. See *Musgrave* v. *Githens*, 80 Ariz. 188, 294 Pac. 2d 674 (1956), and *Hemlock* 6400 *Tire Co.* v. *McLemore*, 151 Tenn. 99, 268 S. W. 116 (1925). Such cases, however, usually construe the term "motor vehicle" with reference to contemporary statutes dealing with motor vehicles which were in existence at the time. In this connection we note that Ark. Stat. Ann. § 75-722 was first enacted as § 131 of Act 300, Acts of 1937, and that statute applied to "motor truck" without reference to passenger bus or truck-tractor, etc. The licensing statute in effect when Act 300 was enacted was § 32 of Act 11, Acts of 1934 (2d Extraordinary Session). The latter section provides:

"Paragraph B. For motor trucks equipped with pneumatic tires the following fees shall be charged:

½ ton or less capacity ........................$8.00 per annum

1 ton or more than ½ ton capacity ......12.00 per annum

1 ½ tons capacity ...............................35.00 per annum
. . ."

Section 31 of the same act, providing for the licensing of other vehicles, reads:

"(a) For all automobiles equipped with pneumatic tires, used for the transportation of persons, there shall be charged a fee. . . ."

Thus we see that the licensing statute at the time made a distinction between automobiles used for the transportation of persons and "motor trucks". We find this distinction indicative of the meaning of the legislature of the term "motor truck" and hold that the term as used in Ark. Stat. Ann. § 75-722 includes pick-up trucks.

Appellants point out that the statute provides: "No person shall operate any motor truck . . . upon any highway . . .," and suggest that Benton Taylor does not come within the term "operate." Thus, say appellants, since Benton Taylor's employee was exonerated while operating the vehicle, the same jury verdict exonerates Benton Taylor. However we must point out that the term "person" is defined by Ark. Stat. Ann. § 75-303 (a) (Repl. 1957) to mean, "Every natural person, firm, copartnership, association or corporation." Thus since "person" as used in the statute is synonymous with "corporation" and since a corporation cannot operate a vehicle except through the conduct of an individual, we believe that the statute must be construed to include those persons who cause the vehicle to be set in motion such as an employer. For this reason we affirm the judgment against Benton Taylor.

The allegations in the complaint with respect to Phil Taylor are that he violated Ark. Stat. Ann. § 75-

722 in failing to have the necessary flares and warnings signals in his truck. The only proof is the following stipulation: ". . . And, it is further stipulated that Horace Johnson was driving a three-quarter Chevrolet pick-up truck, 1963 model, and that the registered owner of said vehicle was Phil Taylor, and that Horace Johnson was one of the employees of Benton Taylor and that at the time of this collision, was engaged in the operation of this three-quarter pick-up truck with the consent of Phil Taylor and was in the course of his employment with Benton Taylor." We can find no evidence in the record which would sustain a finding that Phil Taylor, the owner, by loaning his vehicle to his brother was in any way guilty of violating the statute. Admittedly the statute only requires a vehicle to be equipped with flares when it is being operated at any time from a half hour after sunset to a half hour before sunrise.

Appellees, recognizing that Phil Taylor may not literally come within the terms of the statute, have suggested that he should be held liable on a negligent entrustment theory in that he knowingly permitted the vehicle to be operated upon the highways at the time and in such defective condition. See 6 Blashfield Auto Law § 254-30 (3d ed. 1966). Here again we find that the record is insufficient to show that Phil Taylor knowingly permitted his vehicle to be operated upon the highways at the time involved without being equipped with flares. The only thing the record shows is that the flares were not in the truck at the time of the collision. For this reason the judgment is reversed as to Phil Taylor.

Affirmed in part and reversed in part.